FILED

2024 Mar-20  AM 09:16
U.S. DISTRICT COURT
N.D. OF ALABAMA



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| JAMIE LEE BARBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No.  5:22-cv-00921-HNJ |
| | ) | |
| SOCIAL SECURITY | ) | |
| ADMINISTRATION, | ) | |
| COMMISSIONER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Plaintiff Jamie Lee Barber seeks judicial review pursuant to 42 U.S.C. § 405(g) of an adverse, final decision of the commissioner of the Social Security Administration ("Commissioner"), regarding his claim for a period of disability and disability insurance benefits.  The undersigned carefully considered the record, and for the reasons expressed herein, the court **AFFIRMS** the Commissioner's decision.

## LAW AND STANDARD OF REVIEW

To qualify for benefits, the claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.  The Regulations define "disabled" as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not

less than 12 months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

In determining whether a claimant suffers a disability, the Commissioner, through an Administrative Law Judge (ALJ), works through a five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520(a)(4). The burden rests upon the claimant at the first four steps of this five-step process; the Commissioner sustains the burden at step five if the evaluation proceeds that far. *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1359 (11th Cir. 2018).

In the first step, the claimant cannot be currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must prove the impairment is "severe" in that it "significantly limits [the] physical or mental ability to do basic work activities . . . ." *Id.* at § 404.1520(c).

At step three, the evaluator must conclude the claimant is disabled if the impairments meet or medically equal one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 1.00-114.02. *Id.* at § 404.1520(d). If a claimant's impairment meets the applicable criteria at this step, that claimant's impairment would prevent any person from performing substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. That is, a claimant who satisfies steps one and two

qualifies automatically for disability benefits if the claimant suffers a listed impairment. *See Williams v. Astrue,* 416 F. App'x 861, 862 (11th Cir. 2011) ("If, at the third step, [the claimant] proves that [an] impairment or combination of impairments meets or equals a listed impairment, [the claimant] is automatically found disabled regardless of age, education, or work experience." (citing 20 C.F.R. §§ 404.1520, 416.920; *Crayton v. Callahan,* 120 F.3d 1217, 1219 (11th Cir. 1997)).

If the claimant's impairment or combination of impairments does not meet or medically equal a listed impairment, the evaluation proceeds to the fourth step, where the claimant demonstrates an incapacity to meet the physical and mental demands of past relevant work. 20 C.F.R. § 404.1520(e). At this step, the evaluator must determine whether the claimant has the residual functional capacity ("RFC") to perform the requirements of past relevant work. *See id.* § 404.1520(a)(4)(iv). If the claimant's impairment or combination of impairments does not prevent performance of past relevant work, the evaluator will determine the claimant is not disabled. *See id.*

If the claimant succeeds at the preceding step, the fifth step shifts the burden to the Commissioner to provide evidence, considering the claimant's RFC, age, education, and past work experience, that the claimant can perform other work. *Id.* § 404.1512(b)(3), 404.1520(g). If the claimant can perform other work, the evaluator will not find the claimant disabled. *See id.* § 404.1520(a)(4)(v); *see also id.* § 404.1520(g). If the claimant cannot perform other work, the evaluator will find the claimant disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g).

The court must determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court reviews the ALJ's "'decision with deference to the factual findings and close scrutiny of the legal conclusions.'" *Parks ex rel. D.P. v. Comm'r, Social Sec. Admin.*, 783 F.3d 847, 850 (11th Cir. 2015) (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991)). Indeed, "an ALJ's factual findings … 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019) (citing 42 U.S.C. § 405(g)). Although the court must "scrutinize the record as a whole … to determine if the decision reached is reasonable … and supported by substantial evidence," *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted), the court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment" for that of the ALJ. "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla,' … [and] means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek*, 139 S. Ct. at 1154 (citations omitted). Therefore, substantial evidence exists even if the evidence preponderates against the Commissioner's decision. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

## PROCEDURAL HISTORY

Barber filed an application for disability and disability insurance benefits on October 19, 2017, alleging disability as of November 1, 2016.  (Tr. 66-86).  The Commissioner denied his claims on November 30, 2017.  (*Id.*).  Barber timely filed a request for hearing on January 16, 2018.  (Tr. 100-01).  On December 20, 2018, the ALJ held a hearing.  (Tr. 34-65).

The ALJ issued an unfavorable decision denying Barber's claim on March 18, 2019.  (Tr. 17-33).  At step one, the ALJ found Barber had not engaged in substantial gainful activity since the alleged disability onset date.  (Tr. 22).  At step two, the ALJ determined Barber manifested the severe impairments of depressive disorder and anxiety disorder.  (Tr. 22-23).  At step three, the ALJ concluded Barber did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R §§ 404.1520(d), 404.1525, 404.1526).  (Tr. 23).  At step four, the ALJ found Barber exhibited the residual functional capacity ("RFC") to "perform a full range of work at all exertional levels," limited by:

> understand[ing], remember[ing], and perform[ing] simple tasks and instructions; … sustain[ing] concentration, persistence, and pace for those tasks and instructions with appropriate breaks for two hour periods; … interact[ing] appropriately with coworkers on [a] work-only related basis and on an occasional basis with the general public[,] and … adapt[ing] to infrequent and gradual changes in the workplace.

(Tr. 25).   Given the afore-cited RFC, the ALJ concluded Barber could perform past relevant work as an assembly press operator.   (Tr. 27).

Barber requested review by the Appeals Council on April 9, 2019.   (Tr. 153-54). The Appeals Council denied the request.   (Tr. 1-6).   Barber then filed suit in federal district court against the Commissioner.   *Barber v. Soc. Sec. Admin.*, No. 5:20-cv-0627-LCB, ECF No. 1.   Thereafter, the Commissioner filed an Unopposed Motion for Entry of Judgment Under Sentence Four of 42 U.S.C. § 405(g) With Remand of the Cause to the Defendant.   *Id.*, ECF No. 14.   The court granted the motion and vacated the ALJ's decision.   *Id.*, ECF No. 15.   Specifically, the court remanded the case to the Appeals Council with instructions to direct the ALJ to:

> further consider Plaintiff's impairments at step two of the sequential evaluation; re-evaluate the persuasiveness of all medical opinions and prior administrative findings under 20 C.F.R. § 404.1520c, including providing specific discussion of the factors of consistency and supportability, and, if necessary, the residual functional capacity; obtain supplemental evidence from a vocational expert if needed; take any further action to complete the administrative record; and issue a new decision.

*Id.*

Barber filed a second application for disability benefits on May 13, 2020.   (Tr. 669-73).   The Commissioner denied the claim on August 27, 2020.   (Tr. 507-12).   Barber filed for reconsideration on September 14, 2020.   (Tr. 513).   The Commissioner denied the reconsideration request on January 19, 2021.   (Tr. 515-20).   Pursuant to Barber's

timely request on February 2, 2021 (tr. 521-22), the ALJ held a new hearing on August 19, 2021 (tr. 385-417).

The ALJ issued another unfavorable decision on September 9, 2021. (Tr. 359-84). At step one, the ALJ found Barber had not engaged in substantial gainful activity since the alleged disability onset date. (Tr. 369). At step two, the ALJ determined Barber manifested the severe impairments of bipolar disorder, anxiety disorder, post-traumatic stress disorder, and intellectual disorder. (*Id.*). At step three, the ALJ concluded Barber did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526). (Tr. 370). Specifically, the ALJ found only moderate limitations in the broad areas of functioning specified in "Paragraph B." (*Id.*). At step four, the ALJ found Barber exhibited the RFC to "perform a full range of work at all exertional levels," limited by:

> understanding, remembering, and performing simple task [sic] and instructions, sustaining concentration, persistence, and pace for such task and instructions with appropriate breaks for two-hour periods, interacting appropriately with supervisors and coworkers for work-only related matters, having infrequent contact with the general public, and handling gradual changes in the workplace.

(Tr. 372). In so finding, the ALJ considered CRNP Jasmine McKinley's July 19, 2021 medical source opinion, McKinley's August 17, 2021 medical source opinion, and Dr. John Haney's February 27, 2018 medical source opinion unpersuasive. (Tr. 374). Given the afore-cited RFC, the ALJ deemed Barber unable to perform any past relevant work

since the alleged onset date.  (Tr. 375).  Finally, taking Barber's age, education, work experience, and RFC into account at step five, the ALJ concluded Barber could perform a range of jobs that existed in significant numbers in the national economy—including hand packager, kitchen helper, and electrical assembler.  (Tr. 375-76).

Barber filed a request for review of the hearing decision on October 11, 2021. (Tr. 322-32).  On June 24, 2022, the Appeals Council declined to assume jurisdiction, which deems the ALJ's decision the Commissioner's final decision.  (Tr. 315-21). Thereafter, Barber filed his Complaint in the present case on July 22, 2022.  (Doc. 1).

## ANALYSIS

In this appeal, Barber argues the ALJ (1) improperly found CRNP Jasmine McKinley's and Dr. John Haney's medical source opinions unpersuasive; (2) erroneously concluded Barber did not meet the "Paragraph B" criteria for listings 12.04, 12.05, and 12.15 at step three; and (3) failed to pose a hypothetical question to the vocational expert accounting for the episodic nature of bipolar disorder at step five. (Doc. 13 at 1-2; 26-27).  For the reasons stated herein, the undersigned disagrees on all counts.

# I.   THE ALJ APPROPRIATELY DEEMED THE MEDICAL SOURCE OPINIONS OF CRNP MCKINLEY AND DR. HANEY UNPERSUASIVE.

Under the regulatory framework applicable to Barber's claim,[1] the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources." 20 C.F.R. § 404.1520c(a).  The ALJ must apply the same factors in the consideration of all medical opinions and administrative medical findings, rather than affording specific evidentiary weight to any particular provider's opinion. *Id.*

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain the consideration of those factors.  *Id.* § 404.1520c(b)(2).  Thus, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s)," and "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources[,] the more persuasive the medical opinions or prior administrative medical finding(s) will be."  *Id.* § 404.1520c(c)(1)-(2);

---

[1] On January 18, 2017, the Commissioner revised the regulations governing the assessment of medical opinion evidence for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5867 (Jan. 18, 2017) (codified at 20 C.F.R. § 404.1520c).  Barber's claims, filed on October 19, 2017, fall under the revised regulations.

*see also Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-BCI, 2021 WL 1565832, *3 (M.D. Fla. Apr. 6, 2021) ("Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between the medical source's own opinion and other evidence under the record.").

The ALJ need not address supportability and consistency through separate analyses so long as she attends to the substance of both factors.   20 C.F.R. § 404.1520c(b)(2); *see also Garland v. Ming Dai*, 593 U.S. 357, 369 (2021) (noting though "judges generally must assess the lawfulness of an agency's action in light of the explanations the agency offered for it," the agency does not have to "follow a particular formula or incant 'magic words'"); *Thaxton v. Kijakazi*, No. 1:20-cv-00616-SRW, 2022 WL 983156, *8 (M.D. Ala. Mar. 30, 2022) ("[T]he ALJ need not use any magic words in discussing whether a medical opinion is supported by evidence from the medical source himself and whether the opinion is consistent with other evidence of record.") (citations omitted); *Alvarez c. Comm'r of Soc. Sec.*, No. 20-cv-24711-BLOOM/Otazo-Reyes, 2022 WL 2092886, *2 (S.D. Fla. June 10, 2022) ("The Court is unaware of, and Plaintiff fails to cite, any legal authority indicating that the ALJ cannot address the supportability and consistency of the evidence simultaneously.").

Furthermore, the ALJ may consider the medical source's specialty and the relationship between the claimant and the medical source, including the length, purpose, and extent of the treatment relationship, and the frequency of examinations.  20 C.F.R.

§ 404.1520c(c)(3)-(5).  The ALJ "may" conclude an examining medical source will understand the claimant's impairments better than a medical source who only reviews evidence in the claimant's file.  *Id.* § 404.1520c(c)(3)(v).  The ALJ also "will consider other factors that tend to support or contradict a medical opinion or prior administrative medical finding," including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."  *Id.* § 404.1520c(c)(5).

Finally, the ALJ may consider one or more medical opinions from the same medical source together using the above factors.  *Id.* § 404.1520c(b)(1).  Relatedly, the ALJ need not discuss every piece of evidence in making her decision.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam).  However, the ALJ must provide sufficient detail about a medical source opinion's persuasiveness such that a reviewing court can understand the underlying analysis.  *Winschel*, 631 F.3d at 1179.

### A. CRNP Jasmine McKinley

Barber argues the ALJ improperly discounted the July 19, 2021, and August 17, 2021, opinions of CRNP Jasmine McKinley.  The undersigned disagrees because substantial evidence supports the ALJ's characterization of the medical opinion evidence.

From January 25, 2017, to January 3, 2019, CRNP Thomas Sargent treated Barber at Integrated Behavioral Health for general psychiatric care.  (Tr. 239-66; 284-

99; 311-14; 872-74).[2]  CRNP Jasmine McKinley assumed treatment of Barber on April 1, 2019.  (Tr. 850-71; 902-31).  Dr. Yelena Chistyakova supervised both CRNP Sargent and CRNP McKinley's treatment of Barber, as required by Alabama Code § 34-21-90. (Tr. 930).

On January 25, 2017, Barber began seeing CRNP Thomas Sargent at Integrated Behavioral Health (hereinafter "IBH") for general psychiatric care.  (Tr. 255).  Barber rated his anxiety and depression as 10/10 on a scale of 1-10.  (*Id.*).  Barber confirmed anxiety symptoms of "excessive worry, restlessness, feeling on edge, concentration difficulty, racing thoughts, and panic."  (*Id.*).  In addition, he confirmed depression symptoms of "low mood, anhedonia, decreased energy, decreased motivation, trouble concentrating, irritability, and isolating from peers."  (*Id.*).  He reported sleeping an average of 4 hours per night.  Barber also reported consuming 1-2 alcoholic drinks per week, smoking marijuana daily, and using methamphetamines one week prior.  (*Id.*).  He listed horseback riding and his grandchildren among his social interests and routines. (Tr. 256).  Barber's trauma history included witnessing domestic violence as a child. (Tr. 255).  CRNP Sargent diagnosed a severe form of bipolar disorder, primary insomnia, and generalized anxiety disorder.  (Tr. 257).  He prescribed Abilify and Effexor.  (*Id.*).

---

[2] Because CRNP McKinley resumed treatment of Barber after CRNP Sargent, the undersigned will also recount Sargent's treatment notes for the sake of a complete medical record.

Barber returned to IBH on March 28, 2017. (Tr. 251). Barber reportedly felt "better" with "some room for improvement." (*Id.*). He noted sleeping 2-4 hours her night. (*Id.*). In addition, he admitted consuming 1-2 alcoholic drinks per week, smoking marijuana daily, and using methamphetamines occasionally. (*Id.*). Sargent increased Barber's dosages of Abilify and Effexor, and he began prescribing Trazadone. (Tr. 253).

On May 23, 2017, Barber returned to IBH and reported feeling "so so." (Tr. 247). He rated his depression as 7-8/10 and his anxiety as 5/10 "[a]s long as [he stayed] away from crowds." (*Id.*). Barber denied recent alcohol use but admitted using methamphetamines occasionally. (*Id.*). He reported sleeping 4 hours per night. (*Id.*). Sargent increased Barber's Abilify and Trazadone dosages. (Tr. 249).

On July 31, 2017, Barber told CRNP Sargent he felt "pretty good." (Tr. 243). He rated his depression as 4-5/10 and his anxiety as 3/10 when away from crowds. (*Id.*). He reported drinking "about half a case over the weekend, from Friday to Sunday," and smoking marijuana regularly. (*Id.*). He denied methamphetamine usage for the prior 3 weeks. (*Id.*). Sargent made no changes to Barber's prescriptions. (Tr. 245).

On October 25, 2017, Barber expressed feeling "frustrated since I haven't been working." (Tr. 239). He reported sleeping 4-5 hours per night. (*Id.*). Moreover, he noted drinking a "6 pack" weekly and smoking marijuana regularly. (*Id.*). Barber denied

methamphetamine usage for the past month. (*Id.*). Sargent increased Barber's Trazadone dosage but made no other changes. (Tr. 241).

Shortly thereafter, on November 21, 2017, Barber completed a Function Report-Adult Form. (Tr. 196-203). Therein, Barber reported feeding his animals, occasionally watching his grandchildren, watching television, performing household chores, and preparing meals for himself. (Tr. 196). He reportedly travelled by walking, driving, or riding in a car. (Tr. 199). In addition, Barber claimed he did not go shopping and could not manage money. (*Id.*). He reported occasionally attending his grandchildren's sporting events or church services. (Tr. 200). Moreover, he indicated possessing a short attention span and described his ability to follow written instructions as "fair." (Tr. 201). He explained he could follow spoken instructions depending on how they were explained. (*Id.*). Finally, Barber indicated difficulty interacting with authority figures and handling stress or changes in his daily routine. (Tr. 202).

On January 19, 2018, Barber rated his depression as 6/10 and his anxiety as 3/10. (Tr. 296). He reported consuming 6 alcoholic beverages a week, taking 2-3 shots of moonshine every other week, and smoking marijuana "almost daily." (*Id.*). Sargent increased Barber's Abilify and Effexor dosages. (Tr. 298).

On January 26, 2018, Sargent (supervised by Dr. Chistyakova) completed a psychological evaluation of Barber. (Tr. 260-66). According to Sargent, Barber suffered from marked limitations in paying household bills and keeping personal accounts; driving a vehicle in traffic on public roadways; interacting appropriately with the general

14

public; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; sustaining an ordinary routine without special supervision; working in coordination with or proximity to others without being distracted by them; completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods; and travelling in unfamiliar places or using public transportation.  (Tr. 264-66). Furthermore, Barber purportedly suffered an extreme limitation in shopping in busy, crowded stores or malls.  (Tr. 264).  Sargent estimated Barber would be absent from work about one day per month.  (Tr. 266).

Barber returned to IBH on March 9, 2018.  (Tr. 292).  Since his prior visit, he reported feeling "up and down."  (*Id.*).  He rated his depression and anxiety symptoms each as 7/10.  (*Id.*).  Barber recounted a recent panic attack in a restaurant.  (*Id.*).  In addition, he reported sleeping "better"—around 6 hours per night.  (*Id.*).  Barber stated he drank alcohol occasionally and smoked marijuana regularly.  (*Id.*).  He denied recent methamphetamine use but admitted occasional cravings.  (*Id.*).  Sargent increased Barber's Trazadone dosage.  (Tr. 294).

On May 2, 2018, Barber reported feeling "ok" and "overall pretty good," though he noted residual intrusive memories of childhood domestic abuse.  (Tr. 288).  He reported sleeping 5 hours per night and undergoing several panic attacks provoked by

crowds.  (*Id.*).  Barber reported drinking alcohol occasionally and smoking marijuana regularly.  (*Id.*).  He denied recent methamphetamine use.  (*Id.*).  Sargent began prescribing Hydroxyzine for generalized anxiety disorder.  (Tr. 289).

Barber returned to IBH on July 24, 2018, after a recent vacation and reported "doing good."  (Tr. 284).  Barber stated his depression and anxiety were "mostly well controlled," though he struggled with "breakthrough anxiety."  (*Id.*).  He reported sleeping 6 hours per night, drinking 2-3 alcoholic beverages per week, and smoking marijuana regularly.  (*Id.*).  Sargent switched Barber's Hydroxyzine prescription to Gabapentin.  (Tr. 285).

On October 16, 2018, Barber described feeling "depressed and frustrated."  (Tr. 311).  He reportedly stopped taking Gabapentin because "it made [him] more depressed," but his depression did not improve after discontinuing the medication.  (*Id.*).  He rated his depression and anxiety symptoms both as 7/10.  (*Id.*).  Barber admitted consuming 6 beers a week and smoking marijuana regularly.  (*Id.*).  Sargent increased Barber's Abilify dosage, discontinued Barber's Gabapentin prescription, and prescribed him Wellbutrin.  (Tr. 313).[3]

---

[3] On December 20, 2018, Barber attended a hearing before an administrative law judge (ALJ).  (Tr. 364-65).  During the hearing, Barber confirmed he possessed a license and could drive (tr. 50), attended church about once a month (tr. 51), occasionally watched his granddaughter during the day (tr. 52), assisted with household chores (tr. 56), and travelled to Gulf Shores in July of 2018 (tr. 51).  He denied going to the grocery store.  (Tr. 56).  Barber reported smoking 1½ packs of cigarettes a day and smoking marijuana regularly.  (Tr. 52-53).  Initially, Barber stated he had not used methamphetamines for a few years.  However, when the ALJ questioned Barber about a 2017 report of methamphetamine usage, Barber confirmed "[t]hat's my last one."  (Tr. 530).  Barber claimed he could not work because of his posttraumatic stress symptoms.  (Tr. 54).

On January 3, 2019, Barber returned to IBH and reported feeling "content" and "pretty good." (Tr. 872). He rated his depression and anxiety symptoms as 4/10 and reported sleeping 6 hours per night. (*Id.*). Barber denied tobacco use but confirmed smoking marijuana daily. (*Id.*). He stated he continued to avoid crowds and bought his Christmas presents online. (*Id.*). Sargent made no changes to Barber's medication. (Tr. 874).

On April 1, 2019, Barber began seeing CRNP Jasmine McKinley at IBH. (Tr. 867). He described his mood as "up and down" and reported difficulty falling and staying asleep. (*Id.*). Barber denied alcohol or drug use. (*Id.*). McKinley prescribed him Doxepin for insomnia. (Tr. 870).

Barber returned to IBH on May 20, 2019 and reported feeling "fine." (Tr. 863). He denied alcohol and tobacco use but admitted smoking marijuana occasionally. (*Id.*). He rated his depression as 6/10 and his anxiety as 7/10. (*Id.*). He claimed Doxepin more effectively treated his insomnia than Trazadone. (*Id.*). McKinley made no changes to Barber's medication. (Tr. 865).

On August 12, 2019, Barber reported feeling "ok" but "frustrated every now and then." (Tr. 859). He rated his symptoms of anxiety and depression as 7/10. (*Id.*). Barber denied alcohol use but confirmed occasional marijuana and methamphetamine use. (*Id.*). McKinley made no changes to Barber's medication. (Tr. 861).

On a November 11, 2019, IBH visit, Barber stated, "I'm alright; getting a little depressed." (Tr. 856). He rated his anxiety and depression symptoms as 7/10 and

reported sleeping 6 hours per night "with persistent difficulty falling and staying asleep." (*Id.*).  Barber denied alcohol and tobacco use but admitted occasional marijuana use. (*Id.*).  McKinley made no changes to Barber's prescriptions.  (Tr. 857).

On January 27, 2020, Barber returned to IBH and reported "doing pretty good" with improvements in his depression symptoms.  (Tr. 853).  Specifically, Barber rated his depression symptoms as 5/10 and his anxiety symptoms as 7/10.  (*Id.*).  As before, Barber reported only occasional marijuana use.  (*Id.*).  McKinley made no medication changes.  (Tr. 854).

On April 20, 2020, Barber stated his current levels of anxiety and depression were "mild and manageable."  (Tr. 850).  He reported occasional marijuana use.  (*Id.*). McKinley made no changes.  (Tr. 851).

Barber again reported "mild and manageable" anxiety and depression levels on July 10, 2020, along with occasional marijuana use.  (Tr. 918).  McKinley increased Barber's Wellbutrin dosage.  (Tr. 920).

On July 10, 2020, Barber (through his ex-wife) filled out a second Function Report-Adult form, largely reiterating his responses from the previous form.  (Tr. 726-33).  In addition, Barber stated he helped his mother-in-law lift heavy items, take out garbage, and wash dishes.  (Tr. 727).  He reported needing reminders from loved ones to take care of his personal grooming needs.  (*Id.*).  He did not indicate whether he attended church services.  Barber noted he could follow spoken instructions but not

written ones, and he stated he could get along with authority figures unless "criticized or pushed." (Tr. 731-32).

On October 2, 2020, Barber reported, "I'm doing okay; my depression has been up and down." (Tr. 914). He rated his symptoms of depression as 7/10 and 9/10. (*Id.*). Barber admitted occasional marijuana use. (*Id.*). McKinley again increased Barber's Wellbutrin dosage. (Tr. 915).

On October 30, 2020, Barber complained of severe depression and anxiety, rating both 9/10. (Tr. 910). Barber initially described his overall mood as "depressed" but later changed his answer to "alright/content" upon further evaluation. (*Id.*). Moreover, Barber reported sleeping 4 hours per night and suffering recent panic attacks associated with large crowds. (*Id.*). He admitted occasional marijuana use. (*Id.*). McKinley made no further changes to Barber's medications. (Tr. 911).

Barber returned to IBH on February 17, 2021. (Tr. 906). He described his overall mood as "up and down," but noted "doing pretty good today." Furthermore, Barber reported his depression, irritability, and anxiety were moderate but presently stable. (*Id.*). He claimed sleeping 4 hours per night and admitted occasional marijuana use. (*Id.*). McKinley made no medication changes. (Tr. 907).

On May 11, 2021, Barber described his overall mood as "pretty good" and reported "mostly stable mood." (Tr. 902). He reported occasional marijuana use. (*Id.*). McKinley made no changes to Barber's medication levels. (Tr. 904).

Throughout the foregoing treatment notes, McKinley did not indicate any significant abnormalities on Barber's mental status exams.  Rather, Barber's behavior reflected him as consistently cooperative, with normal speech, language, and perception; appropriate thought content; logical and coherent thought process; intact associations; fair insight, judgment, and attention/concentration; and intact recent and remote memory and fund of knowledge.  (Tr. 850-51, 853-54, 856-57, 860-61, 864, 869, 903-04; 906-07, 910-11, 914-15; 919-20).  In addition, McKinley consistently described Barber's appearance as "well-groomed."  (Tr. 853, 856, 859, 864, 869, 903, 906, 910, 914, 919).  Finally, McKinley consistently listed drug use as an "aggravating factor" of Barber's presenting illness.  (Tr. 850, 853, 856, 859, 863, 867, 902, 906, 910, 914, 918).

On July 19, 2021, McKinley (supervised by Chistyakova) completed a psychological evaluation of Barber.  (Tr. 922-27).  According to that opinion, Barber suffered from "[b]ipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes."  (Tr. 922).  Regarding depressive syndrome, Barber exhibited symptoms of "[a]nhedonia or pervasive loss of interest in almost all activities," "[s]leep disturbance," "[d]ecreased energy," and "[d]ifficulty concentrating or thinking."  (Id.).  Regarding manic syndrome, Barber exhibited symptoms of "[p]ressure of speech," "[f]light of ideas," "[d]ecreased need for sleep," "[e]asy distractibility," and "[i]nvolvement in activities that have a high probability of painful consequences which are not recognized."  (Tr. 923).  In addition, McKinley indicated Barber suffered from an anxiety-related disorder characterized by

"[a]utomatic hyperactivity"; "[a]pprehensive expectation"; "[v]igilance and scanning"; "[a] persistent irrational fear of a specific object, activity, or situation"; and "[r]ecurrent severe panic attacks." (Tr. 924). In the following areas of mental functioning, Barber manifested the following limitations:

- Understanding, remembering, or applying information: moderate
- Interacting with others: extreme
- Concentrating, persisting, or maintaining pace: marked
- Adapting or managing oneself: marked

(Tr. 924-25).

In addition, Barber reportedly presented the following markedly impaired work-related limitations:

- The ability to remember locations and work-like procedures;
- The ability to understand and remember short and simple instructions;
- The ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
- The ability to make simple work-related decisions;
- The ability to interact appropriately with the general public;
- The ability to ask simple questions or request assistance;
- The ability to accept instructions and respond appropriately to criticism from supervisors; and
- The ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

(Tr. 925-26).

Likewise, Barber reportedly presented the following extremely impaired work-related limitations:

- The ability to understand and remember short and simple instructions;
- The ability to carry out detailed instructions;

21

- The ability to maintain attention and concentration for extended periods;
- The ability to sustain an ordinary routine without special supervision;
- The ability to work in coordination with and proximity to others without being distracted by them;
- The ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods;
- The ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness;
- The ability to respond appropriately to changes in the work setting; and
- The ability to set realistic goals or make plans independently of others.

(Tr. 925-27). McKinley labelled only one of eighteen listed categories as a moderate impairment. (*Id.*). She indicated no mild impairments. (*Id.*).

In a follow-up questionnaire completed on August 17, 2021, McKinley (supervised by Chistyakova) stated Barber manifested "medically demonstrable phenomena" of "disturbance of mood and behavior characterized by severe anxiety attacks, irritability, and poor concentration when in public settings." (Tr. 929). Moreover, she observed Barber's prescribed medications "improve his level of functioning from baseline … but do not improve him to pre-illness levels," preventing him from "work[ing] on a regular or continual basis." (*Id.*). When asked whether Barber's condition had improved since initiating treatment, McKinley responded Barber's "mental health has waxed and waned over time, alternating between stability and periods of decompensation, as is the nature of bipolar disorder and PTSD." (Tr. 930). Furthermore, she opined Barber's activities of daily living—namely providing care for family members and pets, managing personal care, preparing simple meals,

performing household chores, driving, watching television, and spending time with family—were "expected even at his current level of functioning." (*Id.*). Finally, McKinley suggested illicit substances did not impact Barber's current level of functioning and noted Barber "reports no current use." (*Id.*).[4]

The ALJ evaluated McKinley's July 19, 2021, and August 17, 2021, opinions, summarized previously. As to the July opinion, the ALJ concluded:

> Aspects of Ms. McKinley's July 19, 2021 opinion are not supported by the evidence. For instance, she indicated the claimant was unable to maintain attention and concentration for extended periods, yet the evidence demonstrates he has taken care of his grandchildren. Also, Ms. McKinley indicated the claimant had a seriously limited ability to understand [and] remember short and simple instructions, yet he indicated he could follow such instructions in his Function Report-Adult forms. Thus, Ms. McKinley's July 19, 2021 opinion is not persuasive.

(Tr. 374). As to the August opinion, the ALJ concluded:

> Ms. McKinley's August 17, 2021 opinion contains elements that were inconsistent with the evidence. For instance, she indicated the claimant was not using illegal drugs at that time. At the hearing two days later, however, the claimant admitted he was still using marijuana. Also, Ms. McKinley indicated the claimant's ability to care for others was not inconsistent with his current level of functioning. She, however, did not explain how someone who could not sustain attention and concentration for extended periods could care for others, especially since those others would have included his grandchildren with at least one having been an infant. Accordingly, Ms. McKinley's August 17, 2021 opinion is not persuasive.

---

[4] At a second hearing conducted by the ALJ on August 19, 2021, Barber testified he possessed a driver's license and a commercial driver's license. (Tr. 393-94). He admitted using marijuana a week prior to the hearing. (Tr. 395). He reportedly stopped using methamphetamines a year earlier (tr. 395), and he denied ever smoking cigarettes (tr. 394). Barber testified recently travelling by airplane to Montana for a vacation with his family. (Tr. 395). Finally, he stated he could not work because of "COPD," prostate problems, anxiety, and panic attacks. (Tr. 396).

(*Id.*).

In sum, the ALJ found McKinley's opinions unpersuasive because (1) Barber's allegedly extreme limitation in maintaining attention and concentration for extended periods contradicted other evidence in the record, including McKinley's own records, suggesting Barber cared for his grandchildren at his current level of functioning; (2) Barber's statement to McKinley reporting "no current use" of illicit drugs contradicted other evidence in the record suggesting recent drug use; and (3) Barber's allegedly marked limitation in understanding and remembering short and simple instructions contradicted his ability to follow the instructions in the Function Report-Adult forms.

As a separate matter, the ALJ found supervising physician Chistyakova's medical opinions unpersuasive because "there [was] little, if any, evidence she ever saw the claimant." (Tr. 374). Furthermore, the ALJ noted Barber's allegedly marked limitation in driving a vehicle on public roadways contradicted his possession of a valid driver's license. (*Id.*).

Barber contends the ALJ should have credited McKinley's assessment of marked or extreme limitations in the areas evaluated. The undersigned disagrees because substantial evidence supports the ALJ's characterization of the medical opinions.

As an initial matter, the above treatment notes certainly reflect diagnoses of severe bipolar disorder and anxiety disorder, among other conditions. However, such diagnoses do not necessarily equate to functional limitations precluding full-time work. *See Moore,* 405 F.3d at 1213 n.6 (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir.

1986)) ("To a large extent, Moore questions the ALJ's RFC determination based solely on the fact that she *has* varus leg instability and shoulder separation.  However, the mere existence of these impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard.") (emphasis in original); *Mansfield v. Astrue*, 395 F. App'x 528, 531 (11th Cir. 2010) (diagnosis insufficient to establish disability); *Osborn v. Barnhart*, 194 F. App'x 654, 667 (11th Cir. 2006) (While a doctor's letter reflected diagnoses, "it does not indicate in any way the limitations these diagnoses placed on [the claimant's] ability to work, a requisite to a finding of disability.").

This court's narrow task involves assessing whether substantial evidence supports the ALJ's evaluation of the persuasiveness of each medical source opinion, not whether some evidence supports an alternate interpretation.  *See Moore*, 405 F.3d at 1213 (quoting *Bloodsworth,* 703 F.2d at 1239) ("To the extent that Moore points to other evidence which would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of our appellate review, which precludes us from 're-weigh[ing] the evidence or substitut[ing] our judgment for that [of the Commissioner] . . . even if the evidence preponderates against' the decision.") (alterations in original).

First, Barber argues the ALJ improperly discredited CRNP McKinley's finding that Barber suffered an extreme limitation in maintaining attention and concentration for extended periods.  However, substantial evidence supports the ALJ's determination.

The ALJ found McKinley's opinion both unsupported and inconsistent because McKinley's own treatment notes indicated Barber consistently cared for his grandchildren. (Tr. 374; *see also* tr. 851, 854, 857, 861, 864, 869, 903, 907, 911, 915, 919). Moreover, the ALJ elsewhere indicated Barber could drive, care for pets, complete household chores, conduct minor repairs, and shop for gifts online. (Tr. 370). As provided in other decisions, an ALJ may review a claimant's activities in determining whether a medical opinion accords with other record evidence. (Doc. 16 at 8 n. 4). *See, e.g., Matos v. Comm'r of Soc. Sec.*, No. 21-11764, 2022 WL 97144, *4 (11th Cir. Jan. 10, 2022) (holding substantial evidence supported discrediting medical source opinion where claimant "continued to engage in activities of daily living, including independent dressing and grooming, cooking, cleaning, shopping, driving, going on family vacation, and taking care of her family"); *England v. Astrue*, 6:12-CV-01093-KOB, 2013 WL 5230001, *11 (N.D. Ala. Sept. 17, 2013) (holding substantial evidence supported discrediting medical source opinion where claimant testified "he provided some care for his young daughter" and "noted in his Adult Function report that he [was] capable of showering; changing, feeding, bathing, and rocking his daughter; putting her down for naps; helping pick up dishes and dirty clothes; going to the store two to three times a week; and playing video games"); *Kilgore v. Colvin*, 6:13-CV-00899-JEO, 2014 WL 2801287, *5 (N.D. Ala. June 19, 2014) (noting claimant's ability to care for children, perform household chores, cook, and shop contradicted doctor's opinion of disabling limitations).

26

Barber attempts to distinguish the aforementioned cases. (Doc. 19 at 5-7). As to *Matos*, Barber argues his own activities were comparatively limited because his ex-spouse and mother-in-law aided him with household tasks and he "worried about his granddaughter when she was not around him." (*Id.* at 6-7). However, Barber does not demonstrate how these facts detract from his individual ability to maintain focus and ensure the completion of tasks over time, particularly as he does not maintain his family members direct him as to those activities.

In addition, Barber contends the claimants in *England* and *Kilgore* suffered from physical rather than mental limitations, which suggests an inapposite comparison to this case. That distinction does not mar those cases' applicability to the circumstances at bar: evidence of abilities reflected by certain activities may contradict a claimant's contrary assertions vis-à-vis those capacities, regardless of whether such abilities comprise physical or mental manifestations. The ALJ in the present case determined Barber's daily activities—namely, providing childcare—required the *mental* acuity to maintain focus and complete tasks over time. Accordingly, the ALJ concluded Barber exhibited the RFC to "sustain[] concentration, persistence, and pace for [simple] task and instructions with appropriate breaks for two-hour periods." (Tr. 372). This determination reflected a proper evaluation of CRNP McKinley's opinion and the existing record.[5]

---

[5] That McKinley opined Barber's daily activities—caring for grandchildren and pets, managing personal care, preparing simple meals, performing light household chores, and watching television,

Second, Barber argues the ALJ improperly found McKinley's opinion unpersuasive based on evidence of Barber's drug use.  Again, substantial evidence supports the ALJ's determination given multiple inconsistencies in the record.  In her August 17, 2021, opinion, McKinley opined, "[t]he use of illicit substances have no impact on Mr. Barber's current level of functioning."  (Tr. 930).  However, as aforementioned, McKinley's own treatment notes consistently list drug use as an "aggravating factor" of Barber's presenting illness.  (Tr. 850, 853, 856, 859, 863, 867, 902, 906, 910, 914, 918).  *See also* doc. 16 at 10; "Marijuana," by Mayo Clinic Staff, https://www.mayoclinic.org/drugs-supplements-marijuana/art-20364974   ("If  you have a mental health condition, use marijuana with caution. Marijuana use might worsen manic symptoms in people who have bipolar disorder. If used frequently, marijuana might increase the risk of depression or worsen depression symptoms.").  Moreover, McKinley claimed Barber "reports no current use" of illicit substances.  (Tr. 930). However, McKinley's treatment notes reflect consistent use of marijuana.  (Tr. 850, 853, 856, 859, 863, 902, 906, 910, 914, 918).  Furthermore, at an administrative hearing conducted two days after McKinley penned her August 17 opinion, Barber admitted using marijuana "last week."  (Tr. 395).  Thus, inconsistencies in Barber's reported use of marijuana undermine McKinley's opinion in this regard.[6]

---

for example—were "expected even at his current level of functioning" does not alter this analysis. (Tr. 930).  The ALJ—not the medical source—determines the claimant's "current level of functioning" vis-à-vis work-related activities.

[6] Nor was the ALJ required to credit Dr. Haney's medical source opinion as to Barber's illicit drug use

Finally, Barber argues the ALJ erred in discrediting McKinley's finding that Barber suffered a marked limitation in understanding and remembering short and simple instructions.    Yet substantial evidence supports the ALJ's alternate determination.    In her July 18, 2021, opinion, McKinley simultaneously indicated a *moderate* limitation in the broad area of "understanding, remembering, and applying information" (tr. 924) and a *marked* limitation in "understand[ing] and remember[ing] short and simple instructions" (tr. 925).    Thus, in the span of two pages, McKinley's opinion appears to present inconsistent contemporaneous assertions.    In addition, the ALJ noted Barber's own Function-Adult Reports exhibited a fair ability to follow written instructions, even when assisted by third parties.  (Tr. 201, 374).  Taken together, these facts supply substantial evidence to uphold the ALJ's decision.

Additional evidence supports finding McKinley's medical source opinions unpersuasive, though such evidence cannot substitute the ALJ's articulated grounds.[7] As aforementioned, Barber's mental status exams reflected normal behavior, speech, language, perception, thought content, thought process, associations, insight, judgment,

---

(see tr. 272); as discussed in more detail below, the ALJ properly found Dr. Haney's opinion unpersuasive on independent grounds.

[7] See *Bloodsworth v. Heckler,* 703 F.2d 1233, 1239 (11th Cir. 1983) ("We must scrutinize the record as a whole … to determine if the decision reached is reasonable … and supported by substantial evidence.") (internal citations omitted); *Tavarez v. Comm'r of Soc. Sec.*, 638 F. App'x 841, 849 (11th Cir. 2016) ("Overall, we conclude that the ALJ's clearly articulated grounds for his decision to discredit Tavarez's medical opinion evidence are not supported by substantial evidence. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011). To the extent that the Commissioner identifies other record evidence that supports the ALJ's decision, we do not know whether this evidence formed the basis of the ALJ's determinations, and we will not affirm 'simply because some rationale might have supported the ALJ's conclusions.' *See id.* at 1179.").

attention, concentration, recent memory, and remote memory.  (Tr. 850-51, 853-54, 856-57, 860-61, 864, 869, 903-04; 906-07, 910-11, 914-15; 919-20).[8]  Thus, as the Appeals Council correctly noted, "the Administrative Law Judge substantially supported finding [McKinley's] opinion not persuasive since it is inconsistent with … mental status examinations that reported normal findings."  (Tr. 315).  In addition, despite McKinley's stated belief Barber exhibited extreme limitations in interacting with others, Barber himself admitted he could manage well with authority figures unless "criticized or pushed."  (Tr. 732).  The ALJ also stated Barber regularly attended his grandchildren's sporting events and his son's band performances and traveled on an airplane.  (Tr. 370).

In sum, substantial evidence supports the ALJ's finding McKinley's medical source opinion was inconsistent with the overall record, unsupported, and ultimately unpersuasive.

### B. Dr. Chistyakova

Barber contends the ALJ found CRNP McKinley's medical opinion unpersuasive because "Dr. Chrisyakova's [sic] medical opinion of Mr. Barber's marked limitation in driving a vehicle on a roadway was inconsistent with his continued maintenance of a driver's license," and because Dr. Chistyakova did not treat Barber directly.  (Doc. 13 at 21).  However, Barber misreads the ALJ's opinion.  As the

---

[8] These observations remained unchanged despite Barber's reports of breakthrough depression and anxiety symptoms such as "self-doubt, negative ruminating thoughts[,] and intimidation."  (Tr. 914).

Commissioner accurately notes, "the ALJ was not referring to Ms. McKinley's medical opinions at that point in the decision—she was evaluating Dr. Christyakova's [sic] opinions [as an independent matter], which the ALJ found not persuasive." (Doc. 16 at 11).

Considered independently, substantial evidence supports the ALJ's determination that Dr. Chistyakova's opinions were unpersuasive. As an initial matter, the ALJ may consider the medical source's specialty and the relationship between the claimant and the medical source, including the length, purpose, and extent of the treatment relationship, and the frequency of examinations. 20 C.F.R. § 404.1520c(c)(3)-(5). Because Dr. Chistyakova did not directly treat Barber or document her personal observations, substantial evidence supports the ALJ's decision to give her opinions less weight. Furthermore, Dr. Chistyakova's signature, without more, does not cure McKinley's otherwise unsupported medical opinion.

As to Chistyakova's statements (adopted through CRNP Sargent) regarding Barber's allegedly marked limitation driving a vehicle, Barber argues "the ability or inability to drive is not a part of the basic mental demands of unskilled work." (Doc. 13 at 25). Granted, the psychological evaluation at issue made use of outdated "Paragraph B" criteria addressing activities of daily living rather than work-related mental health limitations. (Tr. 260-66). That said, the ability to drive remains relevant to work-related limitations. *See, e.g, Anteau v. Comm'r of Soc. Sec.*, 708 F. App'x 611, 615 (11th Cir. 2017) (declining to find a marked limitation in maintaining concentration,

persistence, or pace where the claimant acknowledged her ability to drive a car); *Tisdale v. Comm'r of Soc. Sec.*, 806 F. App'x 704, 709 (11th Cir. 2020) (declining to find a marked limitation in understanding, remembering, and applying information where the claimant indicated she could drive). Chistyakova's opinion, though relevant to Barber's work-related limitations, contradicted evidence suggesting Barber could drive and possessed a valid driver's license. As such, the ALJ properly discredited it.

## C. Dr. Haney

John Haney, M.D., conducted an evaluation of Barber on February 27, 2018. (Tr. 267-73). Dr. Haney also reviewed CRNP Thomas Sargent's records from January 2017 to January 2018. (Tr. 271). As an initial matter, Dr. Haney noted Barber's history of work terminations due to absences or lateness. (Tr. 267). He remarked Barber dropped out of school at age 15. (*Id.*). Furthermore, he explained Barber "grew up in a chaotic, violent home in which he witnessed and experienced much abuse by his father." (*Id.*). Dr. Haney detailed Barber's daily activities, which included occasionally assisting with the care of his grandchildren, watching television, and watching his son's band perform. (Tr. 270). He described Barber's medication regimen and history of alcohol and marijuana use. (Tr. 268). Notably, Dr. Haney observed, "[Barber] does not use any other illicit drugs and does not smoke cigarettes." (*Id.*).

In a series of initial tests, Dr. Haney reported Barber "was unable to perform serial sevens, but was able to count forward by threes." (Tr. 268). Moreover, Barber could reportedly perform simple arithmetic problems, but he encountered difficulty

interpreting proverbs, providing current event information, or stating the number of weeks in a year. (*Id.*). Dr. Haney observed Barber's memory and thought processes appeared generally intact. (Tr. 268-69).

Dr. Haney administered the Wechsler Memory Scale (WMS)-III-Abbreviated, the Weschler Abbreviated Scale of Intelligence (WASI), the Back Depression Inventory II, and the Mood Disorders Questionnaire. Summarizing the results, he indicated Barber had an estimated full-scale IQ of 60 and a below-average memory. (Tr. 270-71).

Based on the foregoing evaluations and tests, Dr. Haney diagnosed Barber with severe bipolar I disorder; unspecified anxiety disorder with generalized panic disorder, agoraphobia features; unspecified and uncomplicated cannabis use; a chronic posttraumatic stress disorder; and an unspecified intellectual developmental disability. (Tr. 272). He opined (1) Barber was not capable of consistently attending work and would likely miss 1-2 days per week; (2) emotional instability and anxiety would "remain static" even without marijuana and alcohol use; and (3) Barber's PTSD symptoms caused him to overreact to stress, largely due to his history of developmental trauma. (*Id.*).

Regarding Dr. Haney's opinion, the ALJ concluded:

> The claimant made statements to Dr. Haney about his drug use that were inconsistent with the other evidence. Further, Dr. Haney was unaware of the claimant having gone on vacation in 2017 and taking care of his pets and doing household chores. Thus, Dr. Haney's medical opinion is not persuasive.

(Tr. 374).

Barber argues no genuine inconsistency exists between Dr. Haney's statements regarding the use of illicit drugs and the underlying record.  In addition, he claims the ALJ failed to make an explicit supportability evaluation.  Finally, Barber contends "the reasoning for finding Dr. Haney's Medical opinion unpersuasive is unclear and not stated with particularity."  (Doc. 13 at 32).

As an initial matter, Dr. Haney's statements about Barber's ability to work do not constitute medical opinions and therefore merit no weight.  As the Eleventh Circuit recently reiterated:

> An administrative law judge is not required to agree with the statement of a medical source that a claimant is "disabled" or "unable to work." 20 C.F.R. § 404.1527(d)(1). *Whether a claimant meets the statutory definition of disability is an administrative finding, not a medical opinion*. That administrative finding is "reserved to the Commissioner." *Id.* § 404.1527(d).  And because the Commissioner has delegated his authority to make the finding at the hearing level to an administrative law judge, the finding is effectively reserved to the administrative law judge. *See id.* § 404.1546(c). A medical source's opinion that a claimant is "disabled" or "unable to work" is not dispositive of a disability claim because the determination is reserved to an administrative law judge acting on behalf of the Commissioner.

*Walker v. Comm'r Soc. Sec.*, 987 F.3d 1333, 1338-39 (11th Cir. 2021) (emphasis added).  In addition, the ALJ "will not provide any analysis about how [she] considered such evidence in [her] determination or decision."  20 C.F.R. § 404.1520b(c), 416.920b(c). *See also Dye v. Comm'r of Soc. Sec.*, No. 5:20-cv-459-NPM, 2022 WL 970186, *5 (M.D. Fla. Mar. 31, 2022) (finding statements regarding claimant's "[inability] to resume any type of gainful employment," "[inability] to work on a sustained basis," and "symptoms … significantly and consistently interfere[ing] with work performance and attendance"

constituted "other ways of stating that [claimant] is disabled or not able 'to perform regular and continuing work'" and were thus unentitled to the ALJ's consideration). Given the foregoing precedent and authority, Dr. Haney's statements opining Barber was "often not capable of consistently attending work" and "would probably miss at least one or two days per week due to his psychiatric problems" amounted to issues reserved for the ALJ. (Tr. 272).

Moreover, substantial evidence supports the ALJ's findings regarding the supportability and consistency of Dr. Haney's opinion. In making his evaluation, Dr. Haney reviewed treatment records from CRNP Sargent spanning from January 29, 2017, to January 19, 2018. (Tr. 267).[9] Sargent's notes confirm Barber's drug and alcohol habits—namely daily marijuana use, weekly alcohol use, and occasional methamphetamine use. (Tr. 239, 243, 247, 251, 255, 296). However, Dr. Haney's description of Barber's substance use leaves out any mention of methamphetamines or tobacco:

> Mr. Barber reported weekend use of alcohol …. Typically he drinks about six beers a week, and may consume one or two shots of whiskey every other week. He said that he smokes marijuana frequently "to calm my nerves." *He does not use any other illicit drugs and does not smoke cigarettes*.

(Tr. 268) (emphasis added).

---

[9] The record is unclear as to whether the above time span encompassed treatment notes from Barber's January 25, 2017, visit. The undersigned will assume Dr. Haney reviewed those notes, as well.

The undersigned finds that testimony both inconsistent and unsupported.  In particular, CRNP Sargent's treatment notes, reviewed by Doctor Haney, divulge the following information:

- On January 25, 2017, Barber reported using methamphetamines one week prior. (Tr. 255).
- On March 28, 2017, Barber reported using methamphetamines occasionally.  (Tr. 251).
- On May 23, 2017, Barber admitted occasional methamphetamine use.  (Tr. 247).
- On July 31, 2017, Barber denied methamphetamine usage for the prior 3 weeks. (Tr. 243).
- On October 25, 2017, Barber denied methamphetamine use for the prior month. (Tr. 239).

In addition, Barber did not admit tobacco use in any of the treatment notes reviewed by Dr. Haney.  However, at the administrative hearing dated December 20, 2018, Barber reported smoking 1½ packs of cigarettes a day.  (Tr. 52-53).  At the same hearing, Barber initially stated he had not used methamphetamines for a few years. However, when the ALJ questioned Barber about a 2017 report of methamphetamine use, Barber confirmed "[t]hat's my last one."  (Tr. 530).  Taken together, these facts demonstrate Dr. Haney's opinion stemmed from a contradictory, incomplete record. As such, his opinion was both unsupported and inconsistent in this regard.

The ALJ also discounted Dr. Haney's opinion because he was not aware of Barber's recent vacation, pet-related responsibilities, or typical household activities. That is, the ALJ implicitly rejected the opinion in part because it contrasted with the record evidence.  The Eleventh Circuit permits an ALJ's rejection of a medical opinion

in part when the opinion contradicts pertinent evidence of daily activities. *See e.g.,*
*Carpenter v. Comm'r of Soc. Sec.,* 614 F. App'x 482, 488-89 (11ᵗʰ Cir. 2015) (ruling the ALJ
possessed good cause to discount treating physician's opinion partly because it "was
somewhat at odds" with the plaintiff's description of his daily activities reported to
another physician); *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11ᵗʰ Cir. 2005) (finding ALJ
did not err in discounting treating chiropractor's opinion because it "failed to account
for [claimant's] diverse daily activities"); *Tisdale v. Soc. Sec. Admin., Comm'r,* 806 F. App'x
704, 710 (11ᵗʰ Cir. 2020) (finding ALJ entitled to reject physician's opinion that claimant
would "likely require a sheltered work setting" where claimant's descriptions of her own
daily activities did not support such a limitation); *see also id.* ("As we have said before,
the ALJ 'may reject any medical opinion if the evidence supports a contrary finding.'"
(quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11ᵗʰ Cir. 1987))).

Lastly, the "articulation requirement is met so long as the evaluation addresses
the substance of the factors, regardless of the specific language used in the evaluation."
*Rivera v. Kijakazi*, No. 6:21-cv-93-AAS, 2022 WL 2965883, *4 (M.D. Fla. July 27, 2022).
Given the evidence reviewed previously, the undersigned finds the ALJ stated her
supportability and consistency determinations with sufficient particularity.

## II. THE ALJ APPROPRIATELY DETERMINED BARBER FAILED TO SATISFY THE "PARAGRAPH B" CRITERIA FOR LISTINGS 12.04, 12.05, 12.06, AND 12.15.

To meet the requirements of a listing at step three, Barber must "have a medically
determinable impairment(s) that satisfies all of the criteria in the listing."  20 C.F.R. §

404.1525(d).  The listings identify impairments so severe as to prevent a person from engaging in gainful activity.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  If a claimant contends an impairment equals a listed impairment, the claimant must present evidence that describes how the impairment possesses such an equivalency.  *Armstrong v. Comm'r of Soc. Sec.*, 546 F. App'x 891, 894 (11th Cir. 2013) (citing *Wilkinson ex rel. Wilkinson v. Bowen*, 847 F. 2d 660, 662 (11th Cir. 1987)); *see also Garcia v. Comm'r of Soc. Sec.*, 833 F. App'x 303, 307 (11th Cir. 2020) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)) ("The claimant bears the burden of demonstrating that she meets a Listing.").  If the claimant meets a listed impairment or otherwise establishes an equivalence, the regulations conclusively presume a disability.  *See* 20 C.F.R. § 404.1520(d).  If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment.  *Nichols v. Comm'r of Soc. Sec.*, 679 F. App'x 792, 795 (11th Cir. 2017) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990), *superseded by statute on other grounds as stated in Colon v. Apfel*, 133 F. Supp. 2d 330, 338-39 (S.D.N.Y. 2001)).

To meet the 12.04 (depressive, bipolar, and related disorders), 12.05 (intellectual disorder), 12.06 (anxiety and obsessive-compulsive disorders), and 12.15 (trauma- and stressor-related disorders) listings, a claimant must satisfy the following "Paragraph B" criteria:

> B. … [A]n extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):[10]

---

[10] A claimant experiences marked limitation when his "functioning in [an] area independently,

1. Understand, remember, or apply information (see 12.00E1).[11]
2. Interact with others (see 12.00E2).[12]
3. Concentrate, persist, or maintain pace (see 12.00E3).[13]
4. Adapt or manage oneself (see 12.00E4).[14]

Considering the foregoing criteria, the ALJ rendered the following determinations:

> In understanding, remembering or applying information, the claimant has had a moderate limitation. In his Function Report-Adult forms, he indicated having difficulties in this area, yet he also indicated he could drive, take care of his grandchildren and pets, and do household chores and minor repairs. On January 3, 2019, the claimant told Mr. Sargent he had "bought all his Christmas gifts online."

> In interacting with others, the claimant has had a moderate limitation. In his Function Report-Adult forms, he indicated having difficulties in this area, yet he also indicated he went to his grandchildren's "ballgames" and to watch his son's band once a week. Further, the claimant went on vacation several times including flying to Montana a week before the August 19, 2021 hearing.

> With regard to concentrating, persisting or maintaining pace, the claimant had a moderate limitation. In his Function Report-Adult forms, he indicated having difficulties in this area, yet he also indicated he could drive, take care of his grandchildren and pets, and do household chores and minor repairs. On January 3, 2019, the claimant told Mr. Sargent he had "bought all his Christmas gifts online."

---

appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00(F)(2)(d). He experiences extreme limitation when he is "not able to function in [an] area independently, appropriately, effectively, and on a sustained basis." *Id.* § 12.00(F)(2)(e).

[11] The ability to understand, remember, or apply information "refers to the abilities to learn, recall, and use information to perform work activities." *Id.* § 12.00(E)(1).

[12] The ability to interact with others "refers to the abilities to relate to and work with supervisors, co-workers, and the public." *Id.* § 12.00(E)(2).

[13] The ability to concentrate, persist, or maintain pace "refers to the abilities to focus attention on work activities and stay on task at a sustained rate." *Id.* § 12.00(E)(3).

[14] The ability to adapt or manage oneself "refers to the abilities to regulate emotions, control behavior, and maintain well-being in a work setting." *Id.* § 12.00(E)(4).

> As for adapting or managing oneself, the claimant has experienced a moderate limitation. In his Function Report-Adult forms, he indicated having difficulties in this area, yet he also indicated he took care of his grandchildren's pets [sic]. Further, as mentioned above, the claimant has indicated he went to his grandchildren's "ballgames" and to watch his son's band once a week. Finally, the claimant went on vacation several times including flying to Montana a week before the August 19, 2021 hearing.

(Tr. 370).

Barber takes issue with the ALJ's rationale, which purportedly indicates a "complete 'disconnect' between the areas of inquiry required by [the "Paragraph B" criteria] and the ALJ's findings about certain of plaintiff's activities." (Doc. 13 at 35 (citing *Williams v. Comm'r of Soc. Sec.*, No. 18-cv-11202, 2019 WL 265382, *3 (Jan. 18, 2019, E.D. Mich.)). In essence, Barber argues the ALJ failed to tailor her explanations to Barber's ability to work and focused instead on his general daily activities. Relatedly, Barber contends activities of short duration cannot compare to full-time employment. Furthermore, he asserts the ALJ failed to consider certain statements made by CRNP McKinley and Dr. Haney as to Barber's limitations. As explained more fully below, substantial evidence supports the ALJ's findings as to the "Paragraph B" criteria, and the undersigned declines to reweigh the evidence in Barber's favor.

As previously declared by this court, the Eleventh Circuit maintains that "an ALJ's analysis does not need to semantically match the exact employment-centric terms of the regulations." *Thomason v. Comm'r of Soc. Sec.*, No. 5:20-cv-00269, 2021 WL 4061423, *3 (N.D. Ala. Sept. 7, 2021). Consequently, "the fact that the explanation is

not in express terms of working a job is not relevant. Rather, the question remains whether the record contains substantial evidence to support the ALJ's findings." *Id.; but see Lewis v. Callahan*, 125 F.3d 1436, 1441 (11ᵗʰ Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability...."); *Wisner v. Astrue*, 496 F. Supp. 2d 1299, 1304 (N.D. Ala. 2007) ("The ability to occasionally assist his grandmother in collecting eggs, described by the ALJ as 'work activities,' is not the equivalent of sustaining full-time employment."); *Bennett v. Barnhart*, 288 F. Supp. 2d 1246, 1252 (N.D. Ala. 2003) ("It is the ability to engage in gainful employment that is the key, not whether a plaintiff can perform minor household chores or drive short distances.").[15]

Regarding understanding, remembering, or applying information, the Eleventh Circuit considers a claimant's ability to drive, pay bills, count change, handle a savings account, and/or use a checkbook as relevant evidence of a moderate limitation. *See Tisdale*, 806 F. App'x at 709. In addition, the court finds evidence of a claimant's intact memory, good judgment, ability to think abstractly, and ability to correctly complete

---

[15] These cases do not preclude an ALJ's denial of disability benefits based partly on evidence of a claimant's household duties. In *Lewis*, the Eleventh Circuit opined short everyday activities do not *automatically* disqualify a claimant from receiving benefits. However, household activities may buttress a denial of benefits when they collectively demonstrate the capacity to work, as here. Moreover, though the claimants' daily household activities in *Wisner* and *Bennett* failed to demonstrate the capacity to maintain full-time employment, those decisions do not control the ALJ's circumstance-specific determination in the present case. More to the point, an ALJ's analysis in this regard proceeds on a factually specific basis, without resort to categorical rules.

simple math problems sufficient to support a moderate limitation. *Pinckney*, 853 F. App'x at 350.

Substantial evidence in the record supports the ALJ's finding that Barber possesses a moderate limitation in understanding, remembering, or applying information. In particular, the ALJ cited two Function Report-Adult forms wherein Barber indicated he could drive, care for his grandchildren and pets, complete household chores, and conduct minor repairs. (Tr. 370). In addition, the ALJ noted Barber shopped for gifts online. (*Id.*). Moreover, Dr. Haney's medical source opinion objectively indicated Barber could count forward by threes, perform simple arithmetic, and express similarities between paired objects. (Tr. 268). Such tasks signal a fair "ability[y] to learn, recall, and use information." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(E)(1). For example, online shopping typically requires sifting through listings, making selections, and completing payments. Likewise, driving frequently calls for reading street signs, maps, and/or odometers. Given the foregoing facts, substantial evidence supports the ALJ's determination.

Regarding interacting with others, the Eleventh Circuit considers a claimant's relations with the public and family members as relevant evidence of a moderate limitation. *See Tisdale*, 806 F. App'x at 709 (noting claimant "attends church regularly, … shops in stores for food and clothes[, and] lives with her parents and her two young sons," among other evidence).

42

Substantial evidence in the record supports the ALJ's determination that Barber possesses a moderate limitation in interacting with others.  For instance, the ALJ stated Barber regularly attended his grandchildren's sporting events and his son's band performances.  She also noted Barber travelled with his family on vacation several times, including flying on an airplane.  (Tr. 370).  Sporting events, band performances, and air travel constitute public settings wherein social interaction stands likely.  Moreover, the record reflects Barber lives near his mother-in-law and ex-spouse and interacts with them on a consistent basis.  (Tr. 394 ("I own a camper trailer, but I stay on the same place, property as my [ex-]wife.  She's living in the house with her mama.")).  Such facts provide "more than a mere scintilla" of evidence "adequate to support [the ALJ's] conclusion."  *Biestek*, 139 S. Ct. at 1154.

As to concentrating, persisting, or maintaining pace, the Eleventh Circuit considers a claimant's ability to perform basic acts of self-care and house chores, to concentrate and focus on daily tasks, and to watch television and listen to music sufficient to uphold a moderate limitation.  *Pinckney v. Comm'r of Soc. Sec.*, 853 F. App'x 347, 351 (11th Cir. 2021); *see also Tisdale*, 806 F. App'x at 709 (noting claimant's ability to "care for her infant son, prepare light meals, and do household chores such as laundry and washing dishes" supported a moderate limitation); *Anteau*, 708 F. App'x at 615 (declining to find a marked limitation in maintaining concentration, persistence, or pace where the claimant acknowledged her ability to "handle her finances and drive a car,

which inherently requires a minimum ability to focus, understand, and remember while exercising independent judgment and decision-making skills").

Here again, the ALJ indicated Barber could drive, care for grandchildren and pets, complete household chores, conduct minor repairs, and shop for gifts online. (Tr. 370). Like the afore-cited precedents, these activities reflect an ability, albeit fair, to "focus attention on work activities and stay on task at a sustained rate." 20 C.F.R. § Pt. 404, § 12.00(E)(3).

Finally, regarding adapting or managing oneself, the Eleventh Circuit cites adequate personal hygiene and grooming, normal behavioral control, ability to care for children, and ability to drive as evidence supporting a moderate limitation. *See Tisdale*, 806 F. App'x at 709; *Pinckney*, 853 F. App'x at 351.

In the present case, the ALJ referred to Barber's ability to care for grandchildren and pets, attendance at his grandchildren's sporting events and his son's band performances, and history of air travel in issuing her determination. In addition, Dr. Haney's medical source opinion presented objective evidence Barber "never became visibly upset" and appeared "neatly dressed and groomed in clean, seasonally appropriate attire." (Tr. 268). Moreover, McKinley's treatment notes consistently indicated Barber presented himself in a well-groomed manner. (Tr. 853, 856, 859, 864, 869, 903, 906, 910, 914, 919). Furthermore, McKinley did not indicate any significant abnormalities on Barber's mental status exams. (Tr. 850-51, 853-54, 856-57, 860-61, 864, 869, 903-04; 906-07, 910-11, 914-15; 919-20). The foregoing facts indicate a

44

moderately limited ability to "regulate emotions, control behavior, and maintain well-being." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.00(E)(4). Thus, substantial evidence supports the ALJ's determination in this area.

As to whether the ALJ failed to consider statements by CRNP McKinley and Dr. Haney in rendering her "Paragraph B" determinations, the ALJ need not include opinions properly found unsupported. (Tr. 372 ("This [the ALJ's "Paragraph B" determination] is consistent with the analysis of the medical opinions and prior ministry medical findings below."); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, (11th Cir. 2004) ("In any event, the ALJ was not required to include findings in the hypothetical that the ALJ had properly rejected as unsupported.").

## III. THE ALJ PROPERLY INCLUDED ALL SUPPORTED LIMITATIONS IN THE HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT.

Barber claims the ALJ should have accounted for the episodic nature of bipolar disorder in her hypothetical question to the vocational expert at step five. (Doc. 13 at 26-27). Barber appears to assert this error arose because the ALJ's preceding RFC determination did not consider the episodic nature of bipolar disorder, as CRNP McKinley referenced in her medical source opinion. (*See* Tr. 930 ("[Barber's] mental health has waxed and waned over time, alternating between stability and periods of decompensation, as is the nature of bipolar disorder and PTSD.")). As such, Barber contends the ALJ's question did not fully encompass his limitations or impairments.

At step five, the Commissioner must determine significant numbers of jobs exist in the national economy that the claimant can perform.  20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  An ALJ may make this determination either by applying the Medical Vocational Guidelines or by obtaining the testimony of a vocational expert.  *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (citing *Phillips v. Barnhart*, 357 F.3d 1232, 1239-40 (11th Cir. 2004) (abrogated on other grounds by *Jones v. Soc. Sec. Admin., Comm'r*, No. 22-10507, 2022 WL 3448090 (11th Cir. 2022))).

"'In order for a vocational expert's testimony to constitute substantial evidence the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'"  *Forrester v. Comm'r of Soc. Sec.*, 455 F. App'x 899, 903 (11th Cir. 2012) (quoting *Wilson v. Barnhart*, 284 F.3d 1219, 1227 (11th Cir. 2002) (per curiam)).  However, "'[t]he ALJ is not required to include findings in the hypothetical that the ALJ has found to be unsupported.'"  *Id.* (quoting *Crawford*, 363 F.3d at 1161).

As aforementioned, the ALJ assessed Barber's bipolar disorder as severe at step two.  However, severe bipolar disorder does not necessarily produce disabling work-related limitations.  The ALJ's RFC determination encompassed *supported* work-related limitations associated with severe bipolar disorder, including "understanding, remembering, and performing simple task and instructions, sustaining concentration, persistence, and pace for such task and instructions with appropriate breaks for two-hour periods, interacting appropriately with supervisors and coworkers for work-only related matters, having infrequent contact with the general public, and handling gradual

changes in the workplace." (Tr. 372). In reaching this determination, the ALJ specifically found CRNP McKinley's medical source opinion unpersuasive, given unsupported assertions and inconsistencies in the record.

The undersigned concludes the ALJ did not possess a duty to include McKinley's finding regarding the episodic nature of bipolar disorder in her hypothetical question to the vocational expert. As such, the ALJ's hypothetical question properly mirrored the referenced RFC finding. (*See* Tr. 376 ("[T]he undersigned asked the vocational expert whether jobs have existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.")). Because the ALJ included all of Barber's supported limitations and impairments in the hypothetical question, she correctly relied on the vocational expert's testimony.

## CONCLUSION

For the foregoing reasons, the court **AFFIRMS** the Commissioner's decision. The court will enter a separate final judgment.

**DONE** this 19th day of March, 2024.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE